UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD TERRELL WALTON,

        Petitioner,

                                                        CASE NO. 08-10576

v.

                                                        PAUL D. BORMAN

HUGH WOLFENBARGER,                     UNITED STATES DISTRICT JUDGE

        Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This matter is pending before the Court on petitioner Edward Terrell Walton's habeas corpus petition under 28 U.S.C. § 2254 and respondent Hugh Wolfenbarger's answer to the petition. The habeas petition challenges Petitioner's state convictions for murder, assault with intent to commit murder and to do great bodily harm less than murder, first-degree home invasion, armed robbery, and possession of a firearm during the commission of a felony (felony firearm). Petitioner alleges that his statement to the police was involuntary and that the prosecutor made improper remarks during the opening statement and closing arguments. Respondent argues that Petitioner's prosecutorial-misconduct claims are procedurally defaulted and that Petitioner's challenge to his statement to the police lacks merit. The Court agrees. Consequently, the habeas petition will be denied.

**I. Background**

    **A. The Facts**

Petitioner was charged in Wayne County, Michigan with premeditated murder, felony

murder, assault with intent to commit murder, home invasion in the first degree, armed robbery, and felony firearm. The charges arose from a shooting and robbery at a house on Elmhurst Street in Detroit on April 13, 2004. The evidence at trial established that Petitioner and his co-defendant Marcus Gilmer, also known as "Bones," entered the house, demanded to know where the drugs were, and shot the five occupants of the house. Petitioner took $400 from one victim, and two men died as a result of gunshot wounds incurred during the incident. Three other people were shot, but they survived and testified at Petitioner's trial. Two of the surviving witnesses were acquainted with Petitioner and his co-defendant. None of the witnesses could identify a third man who participated in the incident, but arrived a short time after Petitioner and Gilmer entered the house.

Petitioner was arrested about a month after the shooting. He informed the police that he went to the house on Elmhurst to buy crack cocaine. A guy named Pussy provided him and Gilmer with guns before the three of them went to the Elmhurst address, although they did not discuss robbing the victims before they went there. He and Gilmer entered the house and pulled out their guns after they saw Pussy walk through the door with a gun in his hand. When Pussy asked where the dope was, one of the victims asked what was going on. He (Petitioner) said that he did not know what was going on and that the victim should "shut up." He fired his gun when one of the victims tried to grab it. Then Gilmer started shooting. The two of them did all the shooting. He shot one victim one time and another victim two times. Then they ran outside and drove away.

Petitioner was tried jointly with Gilmer, but before a separate jury. His statement to the police was read into the record. Neither defendant testified or presented any witnesses.

2

Petitioner's defense was that he went to the house to buy cocaine and that the shootings occurred as a result of a "drug deal gone bad." Defense counsel argued to the jury that Petitioner was caught by surprise and that he instinctively pulled out his gun when he saw his companions pull out their guns. Counsel maintained that Petitioner did not invade the home or participate in a larceny, that Petitioner lacked the intent to shoot, rob, or kill anyone, and that his gun fired when one of the victims grabbed it.

### B. The Verdict, Sentence, Appeal, and Habeas Petition

On November 9, 2004, a Wayne County Circuit Court jury found Petitioner guilty of two counts of first-degree (felony) murder, Mich. Comp. Laws § 750.316(1)(b), two counts of second-degree murder, Mich. Comp. Laws § 750.317, two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, one count of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, one count of first-degree home invasion, Mich. Comp. Laws § 750.110(a)(2), one count of armed robbery, Mich. Comp. Laws § 750.529, and one count of felony firearm, Mich. Comp. Laws § 750.227b. At the sentencing on November 29, 2004, the trial court vacated Petitioner's second-degree murder convictions and sentenced Petitioner to concurrent terms of life imprisonment for the felony murder convictions, twenty-three to forty years in prison for assault with intent to commit murder, five to ten years for assault with intent to do great bodily harm less than murder, ten to twenty years for first-degree home invasion, and twenty-three to forty years for the armed robbery. Petitioner was sentenced to a consecutive term of two years in prison for the felony firearm conviction. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion, *see People v. Walton*, No. 259584 (Mich. Ct. App. July 20, 2006), and on February 27,

2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues, *see People v. Walton*, 477 Mich. 1031 (2007) (table).

Petitioner filed his habeas corpus petition through counsel on February 8, 2008. He claims that the trial court violated his right to due process by refusing to suppress his statement to the police because the statement was involuntary and coerced. He also claims that the prosecutor violated his rights to due process and a fair trial by (1) making an improper appeal to the jury's sympathy and outrage and (2) stating that she "believed" the evidence had shown guilt beyond a reasonable doubt.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

4

prisoner's case." *Id*. at 413.

## III. Discussion

### A. The Confession

Petitioner alleges that his statement to the police was involuntary and coerced and therefore should not have been admitted in evidence at trial. He claims that he was unnecessarily isolated in a cell where he could not ask questions or receive answers to questions from anyone. He also alleges that the police did not honor his right to remain silent and to have an attorney present. He claims that he took prescribed medication before the interview and that the police were abusive to him and used trickery to induce his statement by telling him that his co-defendant had implicated him.

#### 1. Legal Framework

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" *Florida v. Powell*, __ U.S. __, __, 130 S. Ct. 1195, 1203 (2010) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989)). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. If at any stage of the process, the defendant indicates that he wishes to consult with an attorney or does not wish to be interrogated, the police may not

5

question him. *Montejo v. Louisiana*, __ U.S. __, __, 129 S. Ct. 2079, 2089-90 (2009); *Miranda*, 384 U.S. at 444-45. However, if a suspect voluntarily, knowingly and intelligently waives his *Miranda* rights, his incriminating responses to questioning may be introduced into evidence in the prosecution's case in chief in a subsequent criminal proceeding. *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990).

The test for voluntariness of a confession is whether "'the confession [was] the product of an essentially free and unconstrained choice by its maker[.] If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (quoting *Culombe v. Connecticut,* 367 U.S. 568, 602 (1961)). A reviewing court must ask whether under the totality of the circumstances law enforcement officials overbore the will of the accused. *Mincey v. Arizona*, 437 U.S. 385, 401-02 (1978). When determining whether a defendant's will was overborne in a particular case, courts must assess

> both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

*Bustamonte,* 412 U.S. at 226 (citations omitted). Courts must "determine[] the factual circumstances surrounding the confession, assess[] the psychological impact on the accused, and evaluate[] the legal significance of how the accused reacted." *Id*. (citing *Culombe*, 367 U.S. at 603).

### 2. The Evidentiary Hearing

At the evidentiary hearing held in state court on August 6, 2004, Police Officer Edward Williams testified that he interviewed Petitioner on May 11, 2004. He informed Petitioner of his constitutional rights using a standard notification-of-rights form. Petitioner stated that he had completed eleven years of school and was able to read and write. Petitioner did not have any questions about his rights and he did not ask for a lawyer or exercise his right to remain silent. After making a statement, which Officer Williams wrote down, Petitioner signed the statement and was given an opportunity to make any changes that he felt were necessary.

Officer Williams claimed that he did not force Petitioner to give a statement, nor threaten him to induce the statement, and he did not recall discussing the penalty for murder. He did, however, inform Petitioner that his co-defendant had implicated him. Petitioner appeared to be alert, coherent, and in good health, and he gave no indication of being under the influence of narcotics or alcohol. Nor did he indicate that he needed food, drink, or sleep.

Officer Olie McMillian testified that he was present during the interrogation and that he did not recall any discussion about the amount of time Petitioner could serve in prison for the crimes. Petitioner was advised of his constitutional rights, and he appeared to understand them. He was not threatened or coerced to give a statement, and he did not ask for a lawyer, nor indicate that he did not want to say anything.

Petitioner testified at the hearing that he was awakened and arrested at his mother's home about 8:30 or 9:00 a.m. on May 11, 2004. The police took him to the police station, and he was placed in a room where he was not permitted to ask questions or to make any telephone calls. He was not fed or given any water, and he had taken some medication the night before to help him sleep. At about 4:45 p.m., he was taken to a room where two detectives were waiting for

7

him. He told them that he did not intend to make a statement and that he wanted to see a lawyer. They told him that he was not going to see a lawyer. When he informed the detectives that he had nothing to say, they told him that his co-defendant had said he was the shooter. Officer Williams cussed at him and grabbed him by the collar, and he was told that he needed to protect himself because he could be sentenced to twenty to forty years in prison for the crime. As a result, he made a statement. Although he was permitted to read his constitutional rights to himself, he did not understand them. He signed his statement because he was told that he could go home if he made a statement.

Officer Williams testified in rebuttal that he did not lay hands on Petitioner, grab him by the collar, or swear at him. Officer Williams also denied promising Petitioner that he could go home if he gave a statement.

### 3. The State Courts' Rulings

The trial court made the following findings of fact at the conclusion of the evidentiary hearing: Petitioner was read his rights, and he initialed his constitutional rights on a constitutional rights form; Petitioner understood his rights, and he agreed to make a statement or to answer any questions put to him; Petitioner acknowledged that he had not been threatened or promised anything, and he was not deprived of food, sleep, or medication before making his statement; he also was not intoxicated, and he understood what was happening. The trial court did not accept Petitioner's testimony that he requested a lawyer, was denied a lawyer, and was coerced, intimidated, or tricked into making the statement. The trial court determined that there was no coercion, trickery, or deceit on the part of the police. The court concluded from the totality of the circumstances that Petitioner voluntarily agreed to answer Officer William's

8

questions.

The Michigan Court of Appeals deferred to the trial court's evaluation of the credibility of witnesses and affirmed the trial court's decision to deny Petitioner's motion to suppress his statement. The Court of Appeals agreed with the trial court's determination that Petitioner was advised of, and understood, his *Miranda* rights and voluntarily waived those rights before giving a statement.

### 4. Analysis

The state courts' conclusions are supported by the record. Petitioner was nineteen years old at the time of his interrogation, and he admitted at the subsequent evidentiary hearing that he probably had four prior contacts with the police as a juvenile. He had completed eleven years of schooling, he could read and write, and he appeared to understand what was happening. At the evidentiary hearing, he was articulate and gave the impression of being an intelligent person.

Petitioner was detained a little more than seven hours before he was interrogated. Although the length of the interrogation is unclear from the record, only one officer interrogated Petitioner, and the advice-of-rights procedure lasted just five minutes.

Petitioner claims that he was nervous and groggy and that he had taken some medication. However, he was not awakened until 8:30 or 9:00 a.m. that day, and the interrogation occurred several hours later. In addition, he apparently took the medication before he went to bed the night before. Although he was informed that his co-defendant had said he was the shooter in the incident, a confession is not involuntary simply because the suspect is told that a co-defendant implicated him in the crime, even if the information is inaccurate or false. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *Guam v. Muna*, 999 F.2d 397, 400 (9th Cir. 1993); *Grimes v. Goord*, 371

9

F. Supp.2d 305, 318-19 (W.D. N.Y. 2004).

The other circumstances surrounding the interrogation were disputed. The officers claimed that Petitioner was advised of his constitutional rights, appeared to understand them, and waived them. Petitioner admitted at the evidentiary hearing that he was made aware of his constitutional rights, but he claimed that he really did not understand them. The testimony that he did not understand his rights is undermined by the fact that he claimed to have invoked his right to remain silent and his right to an attorney during the interview.

The officers testified that Petitioner did not express any discomfort or need for food, drink, or sleep, but Petitioner claimed that he was deprived of those things between the time of his arrest and the interrogation. The officers maintained that they were not physically abusive, but Petitioner testified that Officer Williams "collared" him and cussed at him. Petitioner nevertheless signed a statement in which he claimed that he had not been mistreated.

There also was disagreement on the subject of whether the penalty for murder was discussed and whether Petitioner was told he could go home if he made a statement. Officer Williams did not think he discussed the penalty with Petitioner, and he testified that he did not promise release from custody if Petitioner made a statement. Petitioner's own statement to the police included the comment that he was not promised anything for his statement, and nowhere in his statement did he claim that he was promised release for making his statement. The officers' testimony was not improbable, and the trial court's finding that Petitioner was not entirely credible is entitled to deference. A federal habeas court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Ramonez v. Berghuis*, 490

F.3d 482, 490 (6th Cir. 2007) (explaining that a reviewing court must defer to the trial court's determination of the credibility of witnesses at a *Miranda* suppression hearing).

The Court concludes from the totality of the circumstances that Petitioner's confession "was obtained by means of legitimate law-enforcement methods that withstand constitutional scrutiny." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). His will was not overborne, nor his capacity for self-determination critically impaired. Consequently, the state appellate court's conclusion that Petitioner's statement was voluntary and knowing was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner has no right to relief on the basis of his challenge to the use of his confession.

### B. The Prosecutor's Conduct

Petitioner's remaining two claims allege that the prosecutor's remarks during opening statement and closing arguments deprived him of his rights to due process and a fair trial. Specifically, Petitioner contends that the prosecutor appealed to the jury's sympathy and outrage by referring to the shooting incident as an execution. (Tr. Nov. 3, 2004, at 75; Tr. Nov. 9, 2004, at 16.) Petitioner further alleges that the prosecutor engaged in speculation when she remarked during her opening statement that the victims were killed so that they could not identify the defendants. (Tr. Nov. 3, 2004, at 72-73.) Finally, Petitioner alleges that the prosecutor "testified" during closing arguments by stating that she believed the evidence had shown beyond a reasonable doubt that Petitioner was at the Elmhurst house on April 13, 2004. (Tr. Nov. 9, 2004, at 12-13.)

#### 1. Procedural Default

Respondent contends that these claims are barred from substantive review by Petitioner's

11

procedural default of failing to object to the alleged misconduct during trial. A claim is procedurally defaulted and may not be considered by a federal court on habeas review "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). Three elements must be satisfied before a claim may be considered procedurally defaulted: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The state procedural rule at issue here is Michigan's contemporaneous-objection rule, which requires a criminal defendant to make an objection in the trial court in order to preserve an issue for appellate review. *People v. Carines*, 460 Mich. 750, 762-64 (1999). Petitioner admits that he failed to object to the prosecutor's remarks during trial, and the Michigan Court of Appeals rejected Petitioner's prosecutorial-misconduct claims due to his failure to preserve the issue. The Court of Appeals stated that its review was limited to plain error affecting Petitioner's substantial rights because he did not object to the remarks at trial. The appellate court's reliance on the State's contemporaneous-objection rule was an "adequate and independent" state ground for foreclosing relief, because the rule was "firmly established and regularly followed" by the time it was applied. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.

12

1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Therefore, Petitioner's prosecutorial-misconduct claims are "procedurally defaulted unless [he] can show 'cause and prejudice' to excuse the default." *Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In the alternative, Petitioner must show that the Court's failure to consider the substantive merits of his claims "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 2. Cause and Prejudice; Miscarriage of Justice

Petitioner has not advanced any argument in support of a finding of "cause" for his failure to make a contemporaneous objection to the prosecutor's remarks. The Court need not determine whether he was prejudiced by the alleged constitutional violation because he has not established "cause." *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir. 2010).

The "cause and prejudice" requirement may be overlooked "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To be credible, however, "such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Eyewitnesses identified Petitioner at trial as one of the shooters, and Petitioner's co-

defendant implicated Petitioner in the crime. Petitioner himself admitted to the police that he shot two of the victims. He has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's prosecutorial-misconduct claims.

## IV. Conclusion

Petitioner's prosecutorial-misconduct claims are procedurally defaulted, and the state appellate court's adjudication of Petitioner's challenge to his confession did not result in a decision that was contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

## V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find the Court's assessment of Petitioner's first claim debatable or wrong. Nor would reasonable jurists debate whether the Court's procedural-default ruling was correct or whether Petitioner has stated a valid claim of prosecutorial misconduct. The Court therefore **DECLINES** to issue a certificate of appealability.

        S/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

Dated: April 30, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 30, 2010.

        S/Denise Goodine
        Case Manager